1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   NATHANIEL WILLIAMS,

11              Petitioner,                No. CIV S-08-2192 FCD EFB P

12        vs.

13   CLAUDE E. FINN,

14              Respondent.               FINDINGS AND RECOMMENDATIONS

15   _____/

16        Petitioner is a state prisoner proceeding *in propria persona* with a petition for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the decision of the California

18   Board of Parole Hearings (hereinafter "Board") to deny him parole for three years at his fourth

19   subsequent parole consideration hearing held on July 20, 2006.  He raises the following claims:

20   (1) the Board's decision finding him unsuitable for parole violated his right to due process; (2)

21   the parole consideration hearing and the Board's decision to deny him a parole date violated his

22   plea agreement; (2) the Board improperly considered a false counseling chrono to find him

23   unsuitable for parole; (3) the Board failed to provide him with a timely transcript of the July 20,

24   2006 hearing; (4) the Board's multi-year denial of parole violated his right to due process; and

25   (5) his guilty plea was not knowing and voluntary.

26   ////

As discussed below, the United States Supreme Court has held that the only inquiry on federal habeas review of a denial of parole is whether the petitioner has received "fair procedures" for vindication of the liberty interest in parole given by the state. *Swarthout v. Cooke*, 562 U.S. ___, No. 10-333, 2011 WL 197627, at *2 (Jan. 24, 2011) (per curiam). In the context of a California parole suitability hearing, a petitioner receives adequate process when he/she is allowed an opportunity to be heard and a statement of the reasons why parole was denied. *Id.* at **2-3 (federal due process satisfied where petitioners were "allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied"); *see also Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 16 (1979). For the reasons that follow, applying this standard here requires that the petition for writ of habeas corpus be denied on petitioner's due process claim.

**I. Procedural Background**

Petitioner is confined pursuant to a judgment of conviction entered in the Los Angeles County Superior Court on January 6, 1982, on a charge of first degree murder. Pet. at 1. Pursuant to that conviction, petitioner was sentenced to 25 years-to-life in state prison. *Id.* Petitioner's fourth subsequent parole consideration hearing was held on July 20, 2006. Answer, Ex. 1(a) (Dckt. No. 15-1), at 20.[1] On that date, a Board panel found petitioner not suitable for parole and denied parole for three years. *Id.* at 27.

Petitioner challenged the Board's decision in a petition for writ of habeas corpus filed in the Los Angeles County Superior Court, in which he raised the same claims that are contained in

////

---

[1] Respondent's answer, including exhibits, has been divided into several documents for purposes of the court's CM/ECF electronic docketing system (i.e., Document 15-1, Document 15-2, etc.). The exhibits attached to the answer will be designated by the exhibit number assigned by respondent and also by the docket number assigned by the CM/ECF system. Page numbers refer to consecutive pagination of the document, as set forth in the CM/ECF system.

1  the instant petition.  Answer, Ex. 1(a) (Dckt. No. 15-1).  The Superior Court rejected petitioner's

2  claims for the following reasons:

3     The Court has read and considered the Petition for Writ of habeas
      Corpus filed on March 9, 2007 by the Petitioner.  Having
4     independently reviewed the record, giving deference to the broad
      discretion of the Board of Parole Hearings ("Board") in parole
5     matters, the Court concludes that the record contains "some
      evidence" to support the determination that the Petitioner presents
6     an unreasonable risk of danger to society and is, therefore, not
      suitable for release on parole.  See Cal. Code Reg. Tit. 15,  2042;
7     *In re Rosenkrantz* (2002) 29 Cal.4th 616, 667.

8     The Petitioner was received in the Department of Corrections on
      January 15, 1982 after a conviction for murder in the first degree.
9     He was sentenced to 25 years to life.  His minimum parole
      eligibility date was July 7, 1998.
10

11    The record reflects that on February 24, 1981, the Petitioner and
      his accomplice approached the victims, Porfino and German Perez,
12    who were working as parking lot attendants.  The Petitioner
      pointed a gun at Porfino and demanded money or keys.  Porfino
13    tried to grab the gun and began to struggle with the Petitioner.  The
      Petitioner's accomplice also struggled with German and demanded
14    money or keys.  The Petitioner broke free from Porfino and began
      to run away.  As he fled, the Petitioner turned and shot Porfino
15    twice in the chest, killing him.

16    The Board found the Petitioner unsuitable for parole after a parole
      consideration hearing held on July 20, 2006.  The Petitioner was
17    denied parole for three years.  The Board concluded that the
      Petitioner was unsuitable for parole and would pose an
18    unreasonable risk of danger to society and a threat to public safety.
      The Board based its decision on several factors, including his
19    commitment offense, his unstable social history, and his
      institutional behavior.

20    The Court finds that there is some evidence to support the Board's
      findings that there were multiple victims and that the offense was
21    carried out in a calculated and dispassionate manner.  Cal. Code
      Regs., tit. 15, § 2402, subd. (c)(1)(A) and (c)(1)(B).  The Petitioner
22    and his accomplice armed themselves with a gun and approached
      the two victims in order to either steal money or a vehicle from
23    them.  These actions were planned, deliberate, calculated and
      dispassionate.
24

25    The Court also finds that there is some evidence that the motive
      was very trivial in relation to the offense.  Cal. Code Regs., tit. 15
26    § 2402, subd. (c)(1)(E).  The Petitioner did not know either victim
      and neither victim had harmed or threatened him in any way prior

to the attempted robbery.  Although Porfino did struggle with the Petitioner to get the gun, the Petitioner had extricated himself and was running away when he decided to turn and shoot Porfino.  The robbery was a very trivial motive for shooting Porfino to death.

Additionally, the Court finds that there is some evidence to support the Board's finding that the Petitioner has an unstable social history.  Cal. Code Regs., tit. 15, § 2402, subd. (c)(3).  The Petitioner was involved in gangs from a young age and had several juvenile arrests and convictions prior to the commitment offense, including an attempted robbery.  This demonstrates that the Petitioner had tumultuous relationships with others.

The Court also finds that there is some evidence to support the Board's finding that the Petitioner's institutional behavior supports a finding of unsuitability.  Cal. Code Regs., tit. 15, § 2402, subd. (c)(6).  The Petitioner has received 13 serious 115 disciplines during his incarceration, two of which were received after his previous Board hearing in 2005.  His continued inability to conform to the rules in prison is some evidence that he continues to pose an unreasonable risk of danger to society.

The Board also considered the Petitioner's post-conviction gains, however they still concluded that the Petitioner would pose an unreasonable threat to public safety.  Penal Code § 3041(b).  The Court finds that there is some evidence to support this determination because of the grave nature of the Petitioner's commitment offense, as well as his continued inability to follow rules in prison, as demonstrated by his recent 115s.

The Court finds that the Board did not err in denying the Petitioner parole for a period of three years.  The Board must articulate reasons that justify a postponement, but those reasons need not be completely different from those justifying the denial of parole.  *See In re Jackson* (1985) 39 Cal.3d 464, 479.  The Board indicated that the Petitioner was denied parole for three years because of the nature of his commitment offense; his unstable social history; his recent disciplinary problems in prison; as well as his psychological report's assessment that additional observation and evaluation are necessary.  These reasons were sufficient to justify a three-year denial.

Finally, the court rejects the Petitioner's contention that the denial of parole following a finding of unsuitability by the Board violates the terms of his plea agreement.  The Petitioner agreed to a bargain that subjected him to a life sentence.  An indeterminate sentence is, in legal effect, a sentence for the maximum term unless the parole authority acts to fix a shorter term.  *See In re Dannenberg* (2005) 34 Cal.4th 1061, 1097-1098; *In re Honesto* (2005) 130 Cal.App.4th 81, 92-93.  The relevant statutes and regulations that govern parole clearly do not entitled a prisoner to release on

1    parole, regardless of the amount of time served, unless the
     Petitioner is found suitable for parole. *See Honesto, supra*, 130
2    Cal.App.4th at 92-93.

3         Accordingly, the petition is denied.

4    Answer, Ex. 2 (Dckt. No. 15-5), at 2-4.

5         On February 28, 2008, petitioner challenged the Board's decision in a petition for writ of

6    habeas corpus filed in the California Court of Appeal for the Second Appellate District.  Answer,

7    Ex. 3 (Dckt. No. 15-5), at 6.  That petition was summarily denied by order dated March 12,

8    2008.  Answer, Ex. 4 (Dckt. No. 15-5), at 31.  Petitioner next filed a petition for writ of habeas

9    corpus in the California Supreme Court, which was summarily denied by order dated September

10   10, 2008.  Answer, Exs. 5, 6 (Dckt. No. 15-5), at 33-59.

11        On September 17, 2008, petitioner commenced this action by filing a federal petition for

12   writ of habeas corpus.

13   **II.  Standards for a Writ of Habeas Corpus**

14        An application for a writ of habeas corpus by a person in custody under a judgment of a

15   state court can be granted only for violations of the Constitution or laws of the United States.  28

16   U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

17   application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*,

18   202 F.3d 1146, 1149 (9th Cir. 2000).

19        Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

20   corpus relief:

21             An application for a writ of habeas corpus on behalf of a
          person in custody pursuant to the judgment of a State court shall
22        not be granted with respect to any claim that was adjudicated on
          the merits in State court proceedings unless the adjudication of the
23        claim -

24             (1) resulted in a decision that was contrary to, or involved
          an unreasonable application of, clearly established Federal law, as
25        determined by the Supreme Court of the United States; or

26   ////

1
        (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
2        State court proceeding.

3        Under section 2254(d)(1), a state court decision is "contrary to" clearly established

4 United States Supreme Court precedents if it applies a rule that contradicts the governing law set

5 forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable

6 from a decision of the  Supreme Court and nevertheless arrives at different result.  *Early v.*

7 *Packer*, 537 U.S. 3, 7 (2002) (*citing Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

8        Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas

9 court may grant the writ if the state court identifies the correct governing legal principle from the

10 Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

11 case.  *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because

12 that court concludes in its independent judgment that the relevant state-court decision applied

13 clearly established federal law erroneously or incorrectly.  Rather, that application must also be

14 unreasonable."  *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75

15 (2003) (internal citations omitted) (it is "not enough that a federal habeas court, in its

16 independent review of the legal question, is left with a 'firm conviction' that the state court was

17 'erroneous.'").  "A state court's determination that a claim lacks merit precludes federal habeas

18 relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

19 decision."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

20 **III.  Petitioner's Claims**

21        **A.  Due Process**

22        Petitioner claims that the Board's 2006 decision finding him unsuitable for parole

23 violated his right to due process because there was no evidence he posed a current danger to

24 society if released.  Pet. at 16-19.  He notes that the Board relied, in part, on his "unstable social

25 history" to find him unsuitable for parole.  He disagrees that he had an unstable social history.

26 ////

He argues that this finding was based largely on membership in gangs, but states that he "quit gang activity back in the early 1990s." *Id.* Petitioner explains that his "social history is, as a whole, . . . quite stable." *Id.* He notes that he has maintained contact with his family, relatives, and friends, as evidenced by letters of support contained in the record. *Id.* He explains that he is currently involved with community relations in the city of Compton, and that he "can reach youth like nobody else can." *Id.* at 17. Petitioner argues that the factors cited by the Board in support of its decision are based on outdated facts which do not provide evidence that he is a current danger to society. *Id.*

In a separate claim, petitioner argues that the Board improperly relied on a counseling chrono that should not have been part of his record to find him unsuitable for parole. *Id.* at 4, 10-11. He explains that he was falsely identified in the chrono as the person who violated the rules and that the chrono was removed from his C-File. *Id.* at 10-11. He states that, prior to the issuance of this chrono, he was "getting 1 year denials," and he argues that the existence of the chrono in his file was a factor in receiving a three-year denial in 2006. *Id.* At 10. This claim is properly considered as part of petitioner's due process claim, and not as a separate claim. Accordingly, both claims will be considered together.

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 459-60 (1989).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005) (citations omitted). *See also Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). The

1   United States Constitution does not, of its own force, create a protected liberty interest in a

2   parole date, even one that has been set.  *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981);

3   *Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 7 (1979) (There is "no constitutional or

4   inherent right of a convicted person to be conditionally released before the expiration of a valid

5   sentence."); *see also Hayward v. Marshall*, 603 F.3d 546, 561 (9th Cir. 2010) (en banc).

6   However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that

7   parole release will be granted' when or unless certain designated findings are made, and thereby

8   gives rise to a constitutional liberty interest."  *Greenholtz*, 442 U.S. at 12).  *See also Allen*, 482

9   U.S. at 376-78.

10          California's parole scheme[2] gives rise to a liberty interest in parole protected by the

11   federal due process clause.  *McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002)

12   ("California's parole scheme gives rise to a cognizable liberty interest in release on parole."); *see*

13   *Swarthout v. Cooke*, No. 10-333, 562 U.S. ___, 2011 U.S. LEXIS 1067, *5-6 (Jan. 24, 2011)

14   (per curiam) (stating that the Ninth Circuit's determination that California's parole law creates a

15   liberty interest protected by the federal due process clause "is a reasonable application of our

16   cases.").  However, the United States Supreme Court has held that correct application of

17   California's "some evidence" standard is not required by the federal Due Process Clause.

18   *Swarthout*, 2011 WL 197627, at *2.  Rather, this court's review is limited to the narrow question

19   of whether the petitioner has received adequate process for seeking parole.  *Id.* at *3.  ("Because

20   the only federal right at issue is procedural, the relevant inquiry is what process [petitioner]

21   received, not whether the state court decided the case correctly.")  Adequate process is provided

22   when the inmate is allowed a meaningful opportunity to be heard and a statement of the reasons

23   why parole was denied.  *Id.* at **2-3 (federal due process satisfied where petitioners were

24

25          [2]  In California, a prisoner is entitled to release on parole unless there is "some evidence"

26   of his or her current dangerousness.  *In re Lawrence*, 44 Cal.4th 1181, 1205-06, 1210 (2008); *In re Rosenkrantz*, 29 Cal.4th 616, 651-53 (2002).

1  "allowed to speak at their parole hearings and to contest the evidence against them, were

2  afforded access to their records in advance, and were notified as to the reasons why parole was

3  denied"); *see also Greenholtz*, 442 U.S. at 16.

4        Here, the record reflects that petitioner was present at the 2006 parole hearing, that he

5  participated in the hearing, and that he was provided with the reasons for the Board's decision to

6  deny parole.  Pursuant to *Swarthout*, this is all that due process requires.  Accordingly, petitioner

7  is not entitled to relief on his due process claims.

8        **B.  Breach of Plea Agreement**

9        Petitioner claims that the Board's decision finding him unsuitable for parole violated the

10  provisions of his plea agreement.  Pet. at 4.  He argues that, while the agreement "struck the

11  special circumstances attached to the murder charge that would have led to a term of life without

12  the possibility of parole," the Board's continuing refusal to find him suitable for parole has, in

13  fact, turned his sentence into one of life without the possibility of parole.  Petitioner also points

14  out that the plea agreement did not specify that the Board would be involved in determining

15  whether he could be released.  *Id.*  He argues, "if petitioner was to be subjective [sic] to the

16  parole board, then it should have been written in the plea bargain contract, which it was not."  *Id.*

17  at 9.  Finally, petitioner argues the District Attorney's office breached the plea agreement by

18  expressing opposition to his release on parole at the 2006 suitability hearing.  *Id.*

19        In general, petitioner appears to be arguing that his plea agreement impliedly promised

20  him he would be released from prison after twenty-five years or earlier, regardless of his

21  suitability for parole.  Petitioner faults the Board for not treating his plea agreement as a contract

22  and enforcing its provisions to find him suitable for parole.  *Id.* at 7-8.  He argues that any

23  ambiguity in the document should be construed against the state.  *Id.* at 8.

24        Plea agreements are contractual in nature and are construed using the ordinary rules of

25  contract interpretation.  *United States v. Transfiguracion*, 442 F.3d 1222, 1228 (9th Cir. 2006);

26  *Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003).  Courts will enforce the literal terms of the

1    plea agreement but must construe any ambiguities against the government.  *United States v.*

2    *Franco-Lopez*, 312 F.3d 984, 989 (9th Cir. 2002).  "[W]hen a plea rests in any significant degree

3    on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement

4    or consideration, such promise must be fulfilled."  *Santobello v. New York*, 404 U.S. 257, 262

5    (1971).  In construing a plea agreement, this court must determine what petitioner reasonably

6    believed to be its terms at the time of the plea.  *United States v. Anderson*, 970 F.2d 602, 607

7    (9th Cir. 1992), *as amended*, 990 F.2d 1163 (9th Cir. 1993).

8         Petitioner has failed to demonstrate that the Board's decision finding him unsuitable for

9    parole violated the terms of his plea agreement.  There is nothing in the record that reflects a

10   promise by the prosecutor that petitioner would be released or granted parole at any particular

11   time or before the expiration of his life term.  This is true even though the prosecutor decided not

12   to pursue a special circumstances allegation that would have supported a sentence of life without

13   the possibility of parole.  This court may not grant habeas relief based upon petitioner's

14   unsupported argument that he believed he would be released after a certain number of years,

15   without regard to whether he was found suitable for parole.  Nor has petitioner shown that he

16   was promised release on parole without any involvement by the Board, or that the District

17   Attorney's Office would not argue against his release at his suitability hearings.  The absence of

18   these subjects from the plea agreement does not constitute an affirmative promise that petitioner

19   would be released at any point prior to the expiration of his life term.

20        As set forth above, the California Superior Court rejected this claim on the grounds that

21   petitioner agreed to a plea agreement that subjected him to a life sentence, which meant that he

22   would not released unless he was found suitable for parole.  This decision is not contrary to or an

23   unreasonable application of federal law as set forth above, nor is it based on an unreasonable

24   determination of the facts of this case.  Accordingly, petitioner is not entitled to relief on this

25   claim.

26   ////

### C.  Failure to Provide Petitioner with a Timely Hearing Transcript

Petitioner claims that he did not receive a written or tape-recorded transcript of his July 20, 2006 parole consideration hearing until well beyond the 30 day period mandated by state law.  Pet. at 12, 13.  He states that he filed several prison grievances, advising that the delay was "holding [him] up from filing my writ/appeal in court on this matter."  *Id.*

Petitioner's claim in this regard is based on violations of state law.  Federal habeas corpus relief does not lie for a violation of state law.  *Wilson v. Corcoran*, ___ U.S. ___, 131 S.Ct. 13 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67, 72-73 (1991).  Petitioner has cited no authority for the proposition that the Board's failure to provide a prisoner with the transcript of his parole consideration hearing within 30 days violates the federal constitution.  Accordingly, petitioner's claim in this regard should be denied.

Nor is petitioner entitled to relief on his claim that the delay in receiving a transcript of his suitability hearing prevented him from filing a "writ/appeal" in court.  It is true that "[p]risoners have a constitutional right of access to the courts guaranteed by the Fourteenth Amendment."  *Bounds v. Smith*, 430 U.S. 817, 821 (1977)).  However, an inmate alleging a violation of *Bounds* must demonstrate an actual injury to court access, defined as a specific "instance in which an inmate was actually denied access to the courts."  *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989), (quoting *Kershner v. Mazurkiewicz*, 670 F.2d 440, 444 (3rd Cir. 1982)).  *See also Lewis v. Casey*, 518 U.S. 343, 351-52 (1996).  To demonstrate "actual injury," plaintiff must show that he "could not present a claim to the courts because of the state's failure to fulfill its constitutional obligations."  *Allen v. Sakai*, 48 F.3d 1082, 1091 (9th Cir. 1995).  Petitioner has failed to demonstrate that he has been unable to raise or proceed with his claims in any court because of a delay in receiving his hearing transcript.  Accordingly, he is not entitled to relief on any claim of a violation of the right to access the courts.

////

////

**D.  Three-Year Denial**

In another separately stated claim, petitioner argues that the Board's decision to postpone his next parole consideration hearing for three years violated his right to due process. Pet. at 13-15.  He argues that nothing had changed since his last hearing, when he received a one-year denial.  *Id.* at 15.  Petitioner also contends that the Board must "give separate reasons for denying suitability and postponing the next hearing beyond one year."  *Id.* at 13.  He argues that one of the reasons for the three-year denial was the Board's improper reliance on the counseling chrono, described above

As in the claim above, this due process claim is based on an alleged violation of state law.  Petitioner has cited no federal authority for the proposition that a due process violation automatically results if a state parole board defers parole suitability hearings beyond a one year period or even beyond the time set forth in state regulations.  *See Asgari v. Cullen*, No. CV 09-1830-JSL (AJW), 2010 WL 4916589, at *4 (C.D. Cal. Oct. 25, 2010) (because no case has held that a multi-year deferral by the Board is a violation of federal due process rights, at best a challenge to a multi-year denial of parole alleges only a violation of state law and does not present a cognizable claim for purposes of federal habeas review); *Edwards v. Curry*, No. C 08-1923 CW, 2009 WL 1883739, at *8 (N.D. Cal. June 30, 2009).  Even if the Board lacked authority under state regulations to continue petitioner's next parole suitability hearing for three years, a violation of state mandated procedures will constitute a due process violation only if the violation brings about a fundamentally unfair result.  *Estelle*, 502 U.S. at 65.  Under the circumstances of this case, the Board's decision to defer petitioner's next parole consideration hearing for a period of three years was not fundamentally unfair.

Petitioner has also failed to demonstrate that he suffered prejudice from the Board's decision to postpone his next hearing for three years.  There is no evidence petitioner would have been found suitable for parole prior to that time.  The decision of the Los Angeles Superior Court that the Board's decision to deny petitioner parole for a three-year period was supported by

1    sufficient evidence is not contrary to or an unreasonable application of federal law.  Accordingly,

2    petitioner is not entitled to relief on this claim.

3          **E.  Involuntary Plea Agreement**

4          Petitioner alleges that his plea was involuntary.  He states his attorney did not explain to

5    him the consequences of his plea; namely, that he might be incarcerated for life.  Pet. at 5.

6    Rather, counsel told petitioner and his mother that petitioner would be "committed to C.Y.A. and

7    released on or before his 25th birthday."  *Id.*  Petitioner also states that he did not understand

8    what he was signing, in part because he was illiterate and only 17 years old at the time, and had

9    an IQ of 73.  *Id.*  Petitioner further states that he was transferred to the California Youth

10    Authority for a 90-day period of observation and was told by his attorney that he if did "a good

11    program" he could stay there.  *Id.*  Petitioner claims that his plea agreement was "involuntary

12    and coerced" because his counsel "told him that he would be killed in the gas chamber if

13    petitioner did not take the deal."  *Id.*  He explains that when he was returned to the Superior

14    Court for sentencing after his unsuccessful stay in the C.Y.A., he wanted to withdraw his plea.

15    However, counsel told him that if he proceeded to trial he would be "sentenced to die in the gas

16    chamber," whereas if he entered into the plea agreement he would "get 25 years and be out in 12

17    years."  *Id.* at 5-6.  Petitioner further claims his counsel improperly talked him into waiving his

18    right to be sentenced "by the original judge that the plea was made with," and complains that he

19    was sentenced by "a different judge."  *Id.* at 6.

20          Petitioner's claim that his plea agreement should be set aside based on threats or incorrect

21    advice from his attorney is untimely and should be denied on that basis.  The AEDPA imposed a

22    one-year statute of limitations on the filing of federal habeas petitions.  Title 28 U.S.C.

23    § 2244(d).  Under the circumstances of this case, the statute began to run from "the date on

24    which the factual predicate of the claim or claims presented could have been discovered through

25    the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).  As noted by respondent, petitioner

26    attended a parole consideration hearing on July 27, 2000, at which the Board found him

1  unsuitable for parole after considering the circumstances of his commitment offense and the

2  District Attorney's opposition to his release.  Answer, at 9; Ex. 7 (Dckt. No. 15-5.)  Petitioner

3  would have discovered the factual predicate for all of the above-described claims related to his

4  plea agreement at that hearing.  However, he did not raise these claims until he filed the instant

5  petition in 2009.  His claims were filed beyond the one-year statute of limitations.  Accordingly,

6  they should be denied.[3]

7      **F.  No-Parole Policy**

8      Petitioner also appears to be claiming that he was denied parole as a result of the Board's

9  application of a "no parole policy" for prisoners sentenced to an indeterminate life term that was

10  in effect during the administrations of former Governors Pete Wilson and Gray Davis.  Traverse

11  at 2.  He argues:

12  > Court Rulings have declared that both Governors Wilson and
   > Davis had No Parole Policies; it would stand to reason that since
13  > there have been no substantial changes in the way the Board
   > operates; policy, procedure, or practice, that Governor
14  > Schwarzenegger also has a No-Parole-Policy (sans a few just to
   > make it appear that the Governor and the Board are just being
15  > cautious).

16  *Id.*  Petitioner states that he "does not have the available Resources to prove this claim." *Id.*

17      The Ninth Circuit Court of Appeals has acknowledged that California inmates have a due

18  process right to parole consideration by neutral decision-makers.  *See O'Bremski v. Maas*, 915

19  F.2d 418, 422 (9th Cir. 1990) (an inmate is "entitled to have his release date considered by a

20  Board that [is] free from bias or prejudice ").  Accordingly, parole board officials owe a duty to

21  potential parolees "to render impartial decisions in cases and controversies that excite strong

22  feelings because the litigant's liberty is at stake." *Id.* (quoting *Sellars v. Procunier*, 641 F.2d

23

24      [3] Petitioner has also failed to demonstrate relief on the merits of these claims.  The plea
25  agreement is not part of the record before the court.  Except for petitioner's unsupported
   allegations, there is no evidence before the court that his counsel made false promises or
26  threatened him in order to induce him to enter into the plea agreement.  Accordingly, any such
   claim should be denied.

14

1   1295, 1303 (9th Cir. 1981)).  Indeed, "a fair trial in a fair tribunal is a basic requirement of due

2   process."  *In re Murchison*, 349 U.S. 133, 136 (1955).

3        Based on the authorities cited above, petitioner is correct that he was entitled to have his

4   release date considered by a Board that was free of bias or prejudice.  However, petitioner has

5   offered no evidence suggesting that the Board was operating under a no-parole policy for life

6   prisoners during the administration of Governor Schwarzenegger, or that the 2006 Board which

7   found him unsuitable for parole was operating under such a policy or was biased against

8   petitioner personally.  Accordingly, petitioner is not entitled to relief on this claim.

9   **G.  Request for Evidentiary Hearing**

10       Petitioner requests an evidentiary hearing on his claims.

11       Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the

12   following circumstances:

13           (e)(2) If the applicant has failed to develop the factual basis of a
             claim in State court proceedings, the court shall not hold an
14           evidentiary hearing on the claim unless the applicant shows that-

15               (A) the claim relies on-

16               (I) a new rule of constitutional law, made retroactive to cases on
                 collateral review by the Supreme Court, that was previously
17               unavailable; or

18               (ii) a factual predicate that could not have been previously
                 discovered through the exercise of due diligence; and
19
                 (B) the facts underlying the claim would be sufficient to establish
20               by clear and convincing evidence that but for constitutional error,
                 no reasonable fact finder would have found the applicant guilty of
21               the underlying offense[.]

22       Under this statutory scheme, a district court presented with a request for an evidentiary

23   hearing must first determine whether a factual basis exists in the record to support a petitioner's

24   claims and, if not, whether an evidentiary hearing "might be appropriate."  *Baja v. Ducharme*,

25   187 F.3d 1075, 1078 (9th Cir. 1999).  *See also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir.

26   2005); *Insyxiengmay v. Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005).  A petitioner requesting

15

1  an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief."

2  *Earp*, 431 F.3d at 1167 (citing *Insyxiengmay*, 403 F.3d at 670, *Stankewitz v. Woodford*, 365 F.3d

3  706, 708 (9th Cir. 2004) and *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001)).  To show

4  that a claim is "colorable," a petitioner must demonstrate that a hearing "could enable an

5  applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to

6  federal habeas relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). *See also Ortiz v.*

7  *Stewart*, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted).

8          The court concludes that no additional factual supplementation is necessary in this case

9  and that an evidentiary hearing is not appropriate with respect to the claims raised in the instant

10  petition.  The facts alleged in support of these claims, even if established at a hearing, would not

11  entitle petitioner to federal habeas relief.  Therefore, petitioner's request for an evidentiary

12  hearing should be denied.

13  **IV.  Conclusion**

14          Accordingly, IT IS HEREBY RECOMMENDED that:

15          1.  Petitioner's request for an evidentiary hearing be denied;

16          2.  Petitioner's application for a writ of habeas corpus be denied; and

17          3.  The Clerk be directed to close the case.

18          These findings and recommendations are submitted to the United States District Judge

19  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one

20  days after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

23  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

24  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In

25  his objections petitioner may address whether a certificate of appealability should issue in the

26  event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing

Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant); *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc) (prisoners are required to obtain a certificate of appealability to review the denial of a habeas petition challenging an administrative decision such as the denial of parole by the parole board).

DATED:  April 7, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

17